<pre>
                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


UNITED STATES OF AMERICA,          Case No. 25-CR-173

             Plaintiff,

                                   April 30, 2025
        vs.                        3:15 p.m.

DEMAR DAWSON,

             Defendant.


                       - - - - -

      TRANSCRIPT OF DETENTION HEARING PROCEEDINGS
   BEFORE THE HONORABLE JENNIFER DOWDELL ARMSTRONG,
           UNITED STATES MAGISTRATE JUDGE.

                       - - - - -

APPEARANCES:
For the Government:        Peter Daly, AUSA
                           Office of the U.S. Attorney
                           208 U.S. Court House
                           2 South Main Street
                           Akron, Ohio   44308

For the Defendant:         Justin Roberts, AFPD
                           Office of the Federal Public
                              Defender
                           1660 West Second Street
                           Skylight Office Tower, # 750
                           Cleveland, Ohio   44114
                           (216) 522-4856
</pre>

<u>WEDNESDAY, APRIL 30TH, 2025 AT 3:15 P.M.</u>

THE COURT:  Good afternoon.

Please be seated.

THE CLERK:  Your Honor, the matter before the Court carries Case Number 5:25-cr-173, United States of America versus Demar Dawson.

THE COURT:  Thank you.

Will counsel for the Government introduce himself for the record, please?

MR. DALY:  Good afternoon, Your Honor.

Peter Daly on behalf of the United States.

THE COURT:  Thank you.

And will counsel for the defense introduce himself for the record?

MR. ROBERTS:  Good afternoon, Your Honor.

Justin Roberts on behalf of Mr. Dawson.

THE COURT:  Thank you.

And will the Pretrial Services Officer introduce himself for the record?

THE PROBATION OFFICER:  Ryan Franklin on behalf of Pretrial Services, Your Honor.

THE COURT:  Thank you, Mr. Franklin.

Mr. Dawson, this is a detention hearing pursuant to Title 18, United States Code, 3142 on the Government's motion for detention.

1          The issue before me today is whether there

2     is a condition or combination of conditions that will

3     reasonably assure the safety of other persons and the

4     community and your appearance at court proceedings.

14:42:12  5          Mr. Daly, is this a matter to which the

6     Crime Victims Rights Act applies?

7               MR. DALY:  It is, Your Honor.

8               THE COURT:  And has the Government

9     fulfilled its duty of notification?

14:42:12 10               MR. DALY:  Judge, it is my understanding

11     that the victims have been notified through the victim

12     notification network.

13               THE COURT:  Okay.  I'll ask both parties,

14     have you had an adequate opportunity to prepare for

14:42:12 15     today's proceedings?

16          Mr. Daly?

17               MR. DALY:  Yes, Your Honor.

18               THE COURT:  And Mr. Roberts?

19               MR. ROBERTS:  Yes, Your Honor.

14:42:12 20               THE COURT:  And have both parties received

21     the report from Pretrial Services?

22               MR. DALY:  I have.

23               MR. ROBERTS:  Yes, Your Honor.

24               THE COURT:  Thank you.

14:42:12 25          It appears that this is a case in which the

1    presumption of detention under Title 18, United States

2    Code, 3142 does not apply.

3                    Is that correct, Mr. Daly?

4                    MR. DALY:  Yes, Your Honor.

14:42:13  5         THE COURT:  And does the defense concur?

6                    MR. ROBERTS:  Yes, Your Honor.

7                    THE COURT:  All right.  Mr. Dawson, at this

8    hearing, through counsel you have the right to

9    cross-examine witnesses and to present evidence.

14:42:13 10         You also have the right to testify, but you

11   are not required to do so.

12                   You have the right to remain silent.

13                   You also have the right to consult with

14   Mr. Roberts at any point during this or any future Court

14:42:13 15  hearings.

16                   The Rules of Evidence, other than with

17   respect to privileges, do not apply.  Hearsay evidence is

18   admissible.

19                   Both sides have the right to proceed in

14:42:13 20  whole or in part by way of proffer.

21                   The evidence and examinations are limited

22   solely to the detention determination.  The hearing is

23   not to be used to obtain discovery or to produce

24   testimony that can be used for subsequent impeachment at

14:42:13 25  trial.

1          I will not consider motions to suppress

2     evidence, or objections to evidence allegedly obtained

3     unlawfully.

4          In terms of the order of presentation, the

14:42:13  5     Government will proceed first with its evidentiary

6     presentation and/or proffer relevant to the request for

7     detention.

8          The defense will present its evidence

9     and/or proffer after the Government's presentation.

14:42:13  10          Then the Government may offer any rebuttal

11     evidence and/or proffer.

12          Following that, I will hear argument from

13     the Government and the defense.

14          So we'll bifurcate it, we'll have all the

14:42:13  15     evidence in first, and then the argument.

16          The issue for determination today is

17     whether there is a condition or combination of conditions

18     that will reasonably assure the safety of other persons

19     and the community and the appearance of Mr. Dawson.

14:42:13  20          The evidentiary standards are as follows:

21     There must be clear and convincing evidence that no

22     condition or combination of conditions will reasonably

23     assure the safety of other persons or the community, and

24     there must be a preponderance of the evidence that no

14:42:13  25     condition or combination of conditions will reasonably

1    assure Mr. Dawson's appearance.

2              Mr. Daly, is the Government ready to

3    proceed?

4              MR. DALY:  Yes, Your Honor.

14:42:13 5              THE COURT:  And do you wish to call any

6    witnesses or proffer any evidence?

7              MR. DALY:  The Government won't call any

8    witnesses.

9              We'll proceed by proffer.

14:42:13 10              THE COURT:  All right.  Please go ahead.

11              MR. DALY:  Thank you, Your Honor.

12              First, I would proffer the Pretrial

13    Services report dated April 24th, 2025 which I know the

14    Court has reviewed.

14:42:13 15              THE COURT:  Yes.

16              MR. DALY:  Which includes the defendant's

17    criminal history and the information that he provided to

18    the Pretrial Services Officer on that date.

19              As to the facts underlying the charge in

14:42:13 20    the indictment, the Government would proffer the

21    following:  That on August 15th, 2024, the Akron Fire

22    Department responded to a fire at 1045 Corwin Avenue in

23    Akron.

24              That was a residence, a rental property

14:42:13 25    that was being rented by the people at the house.

1

2          The Fire Department determined that the

3     fire originated from a wood deck on the exterior rear of

4     the house that had been -- well, that was the source of

5     the fire.

6          There were -- the residents of the home

7     were inside at the time.  That included the adult female

8     who was renting the house as well as her juvenile

9     daughter were both inside.

10          Investigation by ATF, the Ohio State Fire

11     Marshal, which included lab testing, showed that gasoline

12     had been poured on the deck which was the accelerant for

13     the fire, which led to the determination that the fire

14     was incendiary or intentionally set.

15          The house at 1045 Corwin Avenue sits on a

16     dead end street.  At the end -- it's the last house at

17     the dead end, and at the end of the street is a guardrail

18     which is immediately -- immediately behind the guardrail

19     is a chain link fence, and then beyond that is a wooded

20     area.

21          In the area of chain link fence behind the

22     guardrail at the end of the street there is a gate, sort

23     of a man gate, a person could access and walk through.

24     And then in the backyard of 1045 Corwin Avenue there is

25     an area of the fence that is cut to allow access from the

1    wooded area into the backyard at 1045.

2            The defendant lived in the house across the

3    street from 1045 Corwin, that is 1042 Corwin Avenue.

4    During an October, '24 interview, 2024 interview with

5    investigators, the defendant stated that he had lived at

6    that address for approximately six years.

7            Based on the investigation, including text

8    messages from the defendant's telephone, it was clear

9    that a romantic relationship existed between the

10   defendant and the resident of 1045 Corwin Avenue, the

11   female who was inside the residence at the time of the

12   fire.

13           The defendant had been evicted from Corwin

14   Avenue, from the house on Corwin Avenue on the date of

15   the fire, August 15th, 2024.  He advised investigators

16   that the locks had been changed on that morning, and he

17   no longer had access to his house at 1042 Corwin Avenue.

18           Video evidence obtained by investigators

19   showed that approximately 25 minutes before the fire, the

20   defendant drove from his residence to a nearby gas

21   station and purchased gasoline, which he pumped into a

22   portable gas container, a red gas can.

23           He then returned directly to his residence

24   and parked in the driveway, pulling behind the house,

25   sort of on the side out of view of the camera.

1          A few moments later, the camera, which is

2     at a distance, captured a person walking from the side

3     driveway of the defendant's home into the street and then

4     going beyond the guardrail into the woods through that

14:42:13 5     man gate and chain link fence.

6          The video was not close enough to

7     positively identify the person by the video alone.

8          The video showed that approximately three

9     minutes after the figure went into the woods, smoke could

14:42:13 10    be seen rising from the area of the fire indicating that

11    the fire had just been set, and then just a few minutes

12    later the same figure returns, appears again at the gate,

13    comes over the guardrail, and then walks again up the

14    defendant's driveway.

14:42:13 15         Data from the defendant's cell phone showed

16    that his activity data, including his health data, step

17    data and activity time correlated exactly with the

18    movements of the figure on the video indicating that the

19    defendant was the figure in the video walking from his

14:42:13 20    home to the house across the street at the time of the

21    fire.

22         Your Honor, that would be the sum and

23    substance of the Government's proffer, subject to

24    argument.

14:42:13 25         THE COURT:  All right.  Thank you,

1  Mr. Daly.

2              Mr. Roberts, do you have any witnesses, or

3  would you like to proceed by proffer?

4              MR. ROBERTS:  Proceed by proffer, Your

14:42:13 5  Honor.

6              THE COURT:  Thank you.

7              MR. ROBERTS:  First, I would also proffer

8  the Pretrial Services report and would add some

9  additional information.

14:42:13 10             As noted here, Your Honor, in the pretrial

11  report it states that Mr. Dawson has been employed for

12  over eight years as a bricklayer and he's actually a

13  member of the union, a bricklayer.

14             He would have that job available to him

14:42:14 15  immediately upon release while on any supervision the

16  Court might impose.  That job is available to him

17  immediately.

18             THE COURT:  Have you had any assurances

19  from his employer?

14:42:14 20             MR. ROBERTS:  I have not had any assurances

21  directly, Your Honor, but it is a union -- he's a member

22  of the union, and through the union there's more

23  guarantee of the work than otherwise.

24             And eight years as a bricklayer, three

14:42:14 25  years within the union.

THE COURT:  Okay.

MR. ROBERTS:  I would also note, Your Honor, that he was interviewed in this case, as noted, in October of 2024.

There's been no indications of any incidents at all before that time or, excuse me, since that time.  That's some time ago now last year.

And I would also proffer the indictment again, noting the date of the incident being some time ago now.

The rest I could reserve for argument.

In addition to the -- I would add some additional facts on the family side of the Pretrial Services report, which is that he has a son who will be graduating in June that he was going to be attending that and has every incentive to follow the Court's --

THE COURT:  Is that a high school graduation or college graduation?

THE DEFENDANT:  High school.

THE COURT:  Okay.

MR. ROBERTS:  High school.

And then he's due to have custody of his younger son throughout the course of the summer so, again, all of that in addition to the address that's located here and verified by his mother will give him

1    every incentive to follow any conditions the Court might

2    impose.

3              The rest, factually, Your Honor, I don't

4    have any additional facts to proffer.  I could reserve

14:42:14 5    the rest for argument.

6              THE COURT:  All right.  Thank you.

7              Do you have any rebuttal, Mr. Daly, before

8    you proceed to argument?

9              MR. DALY:  No, Your Honor.

14:42:14 10              THE COURT:  All right.  Please proceed to

11    argument.

12              MR. DALY:  Thank you, Your Honor.

13              The Government believes that it has shown

14    by clear and convincing evidence that Mr. Dawson poses a

14:42:14 15    risk to the safety of persons in the community, and we

16    would ask that he be detained on that ground.

17              First of all, the conduct at issue in this

18    case is extremely dangerous.  Mr. Dawson lit a residence

19    on fire while two people were inside the home.

14:42:14 20              There's significant evidence, which I've

21    summarized here today by proffer, to indicate that

22    defendant did, in fact, set that fire.

23              Looking at his history and characteristics,

24    and in particular his criminal history which the Court

14:42:14 25    has before it in the Pretrial Services report, the

1    defendant has two prior convictions for unlawful sexual

2    conduct with a minor, a prior conviction for burglary and

3    carrying concealed weapons, and a conviction for domestic

4    violence, a misdemeanor of the first degree.

14:42:14  5              There's a few things that are significant

6    about those.  I recognize that many of them are dated.

7    The convictions are more than 10 years ago, but I think

8    his conduct in those cases is instructive.

9              First, in the 2003 unlawful sexual conduct

14:42:14 10   with a minor case, the defendant was granted judicial

11   release in 2004, and then in 2006 violated the conditions

12   of that judicial release and was sent back to prison.

13             When he got out of prison, again in 2006 he

14   was again convicted of unlawful sexual conduct with a

14:42:14 15   minor.  He was placed on probation, and in 2007 violated

16   that probation.

17             He was continued on community control in

18   that case, but nevertheless was found to have violated.

19             After completing that case, in 2009 he

14:42:14 20   again was engaged in criminal conduct in the form of a

21   burglary of which he was convicted, and that accompanied

22   a carrying concealed weapons conviction, for which he

23   spent a total of three-and-a-half years in prison.

24             Then, in 2014, he again engaged in criminal

14:42:14 25   activity.  He was convicted of domestic violence, so,

1  Your Honor, a violent offense against a family member or

2  household member.

3  So the fact that Mr. Dawson has engaged in

4  very serious offenses, really in an escalating level of

14:42:14 5  violence, and violating the conditions of his supervision

6  on those cases, I think is instructive to the Court and

7  does given concern of his risk to people in the

8  community.

9  I'd also like to note in the Pretrial

14:42:14 10  Services report Mr. Dawson reported, and this is on

11  Page 1, reported to the Pretrial Services Officer that he

12  has lived at 109 Cuyahoga Street in Akron with his mother

13  for the entirety of his life, but as I proffered he was

14  living at 1042 Corwin Avenue in Akron at the time of this

14:42:14 15  incident, and he reported to investigators that he had

16  lived there for six years.

17  So that's conduct he didn't report to the

18  Pretrial Services Officer.

19  So based on all of that, and focusing

14:42:14 20  largely on the very, very dangerous conduct involved

21  here, as well as Mr. Dawson's criminal history of violent

22  offenses, the Government does believe that detention is

23  appropriate.

24  THE COURT:  All right.  Thank you,

14:42:14 25  Mr. Daly.

1          Mr. Roberts.

2          MR. ROBERTS:  Thank you.

3          Your Honor, as the Court noted at the

4    outset, there is no presumption in this case.  And, in

14:42:14  5    fact, the Government, as I understand, is only moving

6    based on the prong of being a danger to the community

7    which is an even higher standard.

8          Number two, Mr. Dawson doesn't really have

9    a lot to prove, but most of the information in this

14:42:14 10    report, as I understand it, as I read it -- I wasn't -- I

11    didn't do the interview; it was done, was verified by his

12    mother, so the idea that he misled and said he

13    didn't -- he lived there his whole life, and it was his

14    childhood home, so I doubt he was lying to the pretrial

14:42:14 15    officer.

16          It's a home that the mother has verified

17    that he can stay at, and it's the current address that he

18    was at at the time of this arrest.

19          So getting to some of the things in the

14:42:14 20    report, Your Honor, he is a high school graduate who has

21    gainful employment and has had gainful employment for a

22    number of years, and would have that available to him

23    were he to be released on any conditions the Court may

24    impose.

14:42:14 25          He does -- he does have the presumption of

1    innocence, and while the charges, you know, might seem,

2    you know, significant, Your Honor, but with the

3    recitation of the history, we are talking about incidents

4    from 21, 19, 16 and 11 years ago.

5              And the analysis for the Court, for

6    purposes of bond, is not about the guilt or innocence of

7    the charge; it's about whether he poses a current danger

8    to the community in a nonpresumption case as he awaits

9    this matter and we proceed -- for further proceedings in

10   front of Judge Oliver.

11             So we are talking about the 21, 19 and 16

12   and 11-year-old conduct as discussed by the Government.

13             In addition to that, as I alluded to

14   earlier, we are talking about an alleged incident that

15   occurred in August of 2024.  Again, no indication of any

16   incidents since that time with respect to Mr. Dawson.

17             Again, he's interviewed apparently -- I

18   don't have the reports, but I understand he's

19   interviewed, both from him and from the Government, in

20   October of 2024.  Again, no incidents since that time.

21             So it's sort of hard-pressed to have

22   something that occurred nearly a year ago, something that

23   he's been aware of at least the authorities investigating

24   since October, seven months ago, and then only now last

25   week, as of last week is he a current danger to the

1    community.

2              There was no effort in the intervening

3    seven or eight months to arrest him and take him off the

4    streets because he's such a danger, and again there's no

5    indication on his part of any kind of witness

6    intimidation or any, any efforts to flee or be further a

7    danger to the community.

8              So as it relates to the analysis of current

9    danger to the community, setting aside the charge for

10   which he's presumed innocent, there's no indication that

11   he's been violent in the recent past.  Again, some of

12   these cases, 20 years ago, 19 years ago, 16 years ago.

13             This investigation's been in front of him

14   since at least October; no incidents.

15             He has children that he's caring for, has

16   gainful employment, a high school education, a stable

17   home, all of which is verified for by his mother.

18             So again, he has every incentive to follow

19   any conditions the Court might impose to assure the

20   safety of the community.

21             The mother indicated she has a firearm but

22   it was located at her business.  It's locked in a safe.

23   If that needs to be accounted for somehow, I'm sure she

24   would do it.

25             But, you know, as it relates to the

1    analysis under the statute with no presumption, the

2    presumption of innocence, the age of this conduct, and in

3    fact the age of this investigation, there's no indication

4    that he's a current danger to the community and wouldn't

14:42:15  5    abide by any conditions the Court might impose.

6                    THE COURT:  All right.  Thank you.

7                    Any reply, Mr. Daly?

8                    MR. DALY:  Just briefly, Your Honor.

9                    On the issue of the length of time between

14:42:15 10    the offense conduct and now, as the Court knows an

11    investigation takes time; in particular an investigation

12    where there needs to be an analysis of electronic data,

13    cell phone data.

14                    Until the Government has the evidence in

14:42:15 15    order to charge a defendant, we can't scoop him up off

16    the street even though -- even if the Government believes

17    he's a danger, so I don't know that that's persuasive in

18    this case.

19                    On the issue of that there's been no

14:42:15 20    history, recent history of violent conduct, I would

21    disagree with that.  Arson is a violent -- a crime of

22    violence.

23                    And while certainly Mr. Dawson enjoys the

24    presumption of innocence, I'm speaking for purposes of

14:42:15 25    this hearing solely on the evidence that I've proffered

1    to the Court today, which I think does indicate at least

2    by clear and convincing evidence that Mr. Dawson set a

3    fire to a residence while people were inside.

4                    Whether ultimately he's convicted of that

5    offense or not is a separate issue, but the Court must

6    consider the nature and circumstances of the offense

7    under 3142(g), including several aggravating factors

8    which includes whether the offense is a crime of

9    violence.  Here it is.

10                   So the Government believes that both there

11   is a recent history of violence including mainly this

12   offense, but also that the Court must look at the

13   defendant's entire history and characteristics which do

14   include violent offenses in the past.

15                   Based on all that, we would ask the Court

16   order Mr. Dawson detained.

17                   THE COURT:  All right.  Thank you,

18   Mr. Daly.

19                   In determining whether there -- as

20   previously stated, the issue for determination today is

21   whether there is a condition or combination of conditions

22   that would reasonably assure the safety of other persons

23   and the community and the appearance of Mr. Dawson.

24                   To sustain detention, the Government must

25   establish either by, one, clear and convincing evidence

1    that no condition or combination of conditions will

2    reasonably assure the safety of other persons or the

3    community, or, two, by a preponderance of the evidence

4    that no condition or combination of conditions will

14:42:15 5    reasonably assure Mr. Dawson's appearance.

6              In determining whether there are conditions

7    of release that will reasonably assure the appearance of

8    Mr. Dawson as required and the safety of any other person

9    in the community, I must take into account the available

14:42:15 10    information concerning the following.

11             First, the nature and circumstances of the

12   offense charged, including whether the offense is a crime

13   of violence, a violation of Section 1591, federal crime

14   of terrorism, or involves a minor victim or a controlled

14:42:15 15   substance, firearm, explosive or destructive device.

16             Second, the weight of the evidence against

17   the person.  And under Sixth Circuit precedent,

18   specifically *United States versus Stone*, this factor goes

19   to the weight of the evidence of dangerousness; not the

14:42:15 20   weight of the defendant's guilt.

21             Third, the history and characteristics of

22   the person, including, A, the person's character,

23   physical and mental condition, family ties, employment,

24   financial resources, length of residence in the

14:42:15 25   community, community ties, past conduct, history relating

1    to drug or alcohol abuse, criminal history, and record

2    concerning appearance at court proceedings; and, B,

3    whether at the time of the current offense or arrest the

4    person was on probation, on parole, or on other release

14:42:15  5    pending trial, sentencing, appeal or completion of a

6    sentence for an offense under federal, state or local

7    law.

8              And finally, the nature and seriousness of

9    the danger to any person or the community that would be

14:42:15 10    posed by the person's release.

11              Of course, at no time do any of these

12    factors affect the presumption of innocence that applies

13    in all criminal proceedings, and I reiterate again that

14    this is a case in which the statutory presumption of

14:42:15 15    pretrial detention under Title 18, United States Code,

16    3142 is not applicable.

17              Put another way, then, I begin with the

18    premise that Mr. Dawson is entitled to be released unless

19    the Government meets its burden of proof as previously

14:42:15 20    discussed.

21              I will take my decision in this proceeding

22    under advisement and will promptly issue a written

23    ruling.

24              Mr. Dawson shall remain in the custody of

14:42:15 25    the United States Marshal pending further proceedings in

1    this matter.

2                    Mr. Daly, anything further on behalf of the

3    Government?

4                    MR. DALY:  No, Your Honor.

14:42:15  5                    Thank you.

6                    THE COURT:  And Mr. Roberts, anything

7    further on behalf of Mr. Dawson?

8                    MR. ROBERTS:  Not at this time, Your Honor.

9                    Thank you.

14:42:15 10                    THE COURT:  Thank you.

11                    Thank you, all.

12                    We are adjourned.

13                    THE CLERK:  All rise.

14                    THE COURT:  Please be seated.

14:42:15 15                    (Proceedings concluded).

16                        - - - - -

17                    C E R T I F I C A T E

18

19        I, Susan Trischan, within and for the State of
     Ohio, do hereby certify that the above transcript is a
     true and accurate record of the hearing held before
20    Magistrate Judge Jennifer Dowdell Armstrong.  This record
     was prepared from an electronic recording provided by the
21    Court.

22

23    **/s/ Susan Trischan**
     /S/ Susan Trischan, RMR,CRR,FCRR,CRC
24    7-189 U.S. Court House
     801 West Superior Avenue
25    Cleveland, Ohio   44113
     216-357-7087