```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,       )
 4                                   ) Case No. 5:25-cr-173-SO
                   Plaintiff,        )
 5                                   ) Cleveland, Ohio
              vs.                    ) Thursday, November 13, 2025
 6                                   ) 11:02 a.m., Courtroom 19A
     DEMAR DAWSON,                   )
 7                                   ) SCHEDULED FINAL PRETRIAL
                   Defendant.        ) HEARING
 8   _____)

 9

10

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS

12          BEFORE THE HONORABLE SOLOMON OLIVER, JR.,
               SENIOR UNITED STATES DISTRICT JUDGE
13

14

15     APPEARANCES:

16     For the Plaintiff:

17          OFFICE OF THE U.S. ATTORNEY - AKRON
            BY:  PETER E. DALY, AUSA
18          2 South Main Street, Suite 208
            Akron, OH 44308
19          (330) 761-0529

20     (Appearances continued on Page 2)

21     COURT REPORTER:

22          Heather K. Newman, RMR, CRR
            U.S. District Court, Northern District of Ohio
23          801 West Superior Avenue, Court Reporters 7-189
            Cleveland, OH 44113
24          (216) 357-7035 or heather_newman@ohnd.uscourts.gov

25     Proceedings reported by machine shorthand; transcript
       produced by computer-aided transcription.
```

1 APPEARANCES CONTINUED:

2 For the Defendant:

3     OFFICE OF THE FEDERAL PUBLIC DEFENDER - CLEVELAND
    BY: TIMOTHY C. IVEY, AFPD
4         JUSTIN R. ROBERTS, AFPD
    1160 West Second Street
5     750 Skylight Office Tower
    Cleveland, OH 44113
6     (216) 522-4856

7

                * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    CLEVELAND, OHIO; THURSDAY, NOVEMBER 13, 2025; 11:02 A.M.
2                               --oOo--
3                         P R O C E E D I N G S
4              COURTROOM DEPUTY:  All rise.
5              THE COURT:  Be seated.
6              COURTROOM DEPUTY:  Your Honor, the case before
7    the Court carries Case Number 5:25-cr-173, United States of
8    America vs. Demar Dawson.
9              THE COURT:  Good morning.
10      Will counsel for the United States introduce himself
11   for the record?
12             MR. DALY:  Good morning, Your Honor, Pete Daly
13   on behalf of the United States.
14             THE COURT:  Thank you.
15      And will counsel for defendant Demar Dawson introduce
16   themselves for the record?
17             MR. IVEY:  Good morning, Your Honor, may it
18   please the Court, Timothy Ivey, along with my colleague
19   Justin Roberts.  We're here on behalf of Mr. Demar Dawson,
20   and Mr. Dawson is present with us in court and we're
21   prepared to proceed.
22             THE COURT:  All right.  Thank you.
23       This is a final pretrial in this case and, of course,
24   at the final pretrial the Court is trying to determine what
25   course the case will take and also specifically to find out

1    if there are particular issues that the Court ought to be
2    aware of heading into the trial so that we can officially
3    deal with those.
4         Let me start with counsel for the United States.
5    Mr. Daly, just in general, I think discovery was provided
6    quite some time ago, so there are no issues relative to
7    that; is that right?
8             MR. DALY:  That's correct, Your Honor.
9    Discovery's been fully provided.
10            THE COURT:  And the defendants have filed a
11   motion seeking a Daubert Hearing in regard to the potential
12   testimony of one of your witnesses.  You're preparing to
13   respond to that?
14            MR. DALY:  Your Honor, I was -- I can file a
15   written response if the Court would like or we can address
16   it today.  I've discussed it with defense counsel.
17            THE COURT:  Well, we'll make a determination
18   later whether to -- until I know more about what discussion
19   has been, it's hard for me to know whether you would be
20   filing a written response or not.
21            MR. DALY:  Sure.
22        So, Judge, at this point, the government doesn't
23   oppose the motion for the Daubert Hearing, but I think it
24   necessitates time for the government to consult with an
25   expert in this field to obtain additional information to

1   adequately prepare for that hearing, so I think the ends of
2   justice would require a continuance of the trial date in
3   order to address the *Daubert* issue.
4               THE COURT: Now, they asked for a Daubert
5   Hearing, but when they talked about a Daubert Hearing, they
6   had a particular potential expert in mind based on the
7   information they had received.
8         You're saying now you think you might need to use
9   someone else other than that person relative to this matter?
10              MR. DALY: So they are challenging two things
11  in the motion -- right? -- they're challenging the testimony
12  of Special Agent McCausland, but they're also challenging
13  the reliability of the data itself.
14              THE COURT: Right.
15              MR. DALY: So, yes, the government would need
16  to consult with an expert, and I can tell the Court we've
17  already started that process. I've already had an initial
18  discussion with potential expert as to the reliability of
19  the data and how that data is collected and that part of the
20  challenge, and I think additional time is needed to allow
21  the government to respond based on that part of the
22  challenge and to provide or to prepare for that hearing.
23              THE COURT: Had you anticipated that you would
24  need potentially two persons beforehand or the motion
25  prompted that conclusion?

1       MR. DALY: The motion really pushed us to
2  consult with the second -- or with the expert, yes.
3       We had -- we had contemplated whether an expert would
4  be needed. I still don't concede that Special Agent
5  McCausland can't testify to what he did without being an
6  expert. We can address that at the hearing, but I think,
7  based on the nature of the challenge, we do need time to
8  consult with an expert as to the science itself or the data
9  itself.
10              THE COURT: Meaning what's the science behind
11 the Apple data?
12              MR. DALY: Correct.
13              THE COURT: And how far along are you on that?
14              MR. DALY: I had my first conversation with
15 the potential expert this past Friday.
16      The motion was filed on Thursday. We spoke with the
17 expert on Friday, the agent and I did.
18              THE COURT: Okay. And this has to do
19 potentially with testimony that you had contemplated from
20 Agent McCausland.
21              MR. DALY: Yes, Your Honor.
22              THE COURT: That certain steps had been taken
23 by the defendant, and the number of steps and so forth, and
24 that that was data taken from his Apple Watch and the
25 question was how reliable is that and what does it show.

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | MR. DALY: Correct.                                                           |
| 2  | Just to be clear, it was not from a watch, it was from                       |
| 3  | his phone itself. There was no watch involved, but the idea                  |
| 4  | is the same. The data was taken from the defendant's phone.                  |
| 5  | There is separate video on which you can't identify a                        |
| 6  | person -- you can see a figure, you can't identify the                       |
| 7  | individual, and so the testimony would be combining the data                 |
| 8  | from the phone with what we see on the video to match that                   |
| 9  | up.                                                                          |
| 10 | Special Agent McCausland reviewed the information from                       |
| 11 | the phone. He's experienced in reviewing phone data. He's                    |
| 12 | done that many, many times. He also reviewed the video, the                  |
| 13 | surveillance video, and he wrote an extensive report as to                   |
| 14 | what he saw in the two sets of information, the data and the                 |
| 15 | video.                                                                       |
| 16 | Up to now, there's been no challenge as to sort of the                       |
| 17 | underlying part of that, the reliability of the data, and so                 |
| 18 | Special Agent McCausland was going to testify, and I                         |
| 19 | anticipate -- unless the Court rules that it's not                           |
| 20 | admissible -- as to what he did, what he analyzed, what he                   |
| 21 | viewed.                                                                      |
| 22 | THE COURT: The question is, what opinion can                                 |
| 23 | he give.                                                                     |
| 24 | MR. DALY: Correct. And the -- now the                                        |
| 25 | challenge is to the underlying data itself and that's what   |

1     is going to necessitate this additional consultation with an
2     expert.
3                   THE COURT:  Okay.  Let me turn to defense
4     counsel now and -- just to see what comments you have and
5     then we can move from there.
6                   MR. IVEY:  Thank you, Your Honor.
7          The defense does not oppose the government's request
8     for time to get an expert because it's the defense position,
9     Your Honor, that this data that's attempted to being used in
10    the cell phone is such an integral part of the case.
11         The government has not provided any discovery that
12    would show any confession, that would show any direct
13    evidence, any eyewitness testimony that would indicate
14    Mr. Dawson committed this act.
15         There is absolutely no rational motive that has been
16    produced for it for him to commit this act.  All of his
17    issues had to do with the property he lived in, not the one
18    across the street.  So committing this act would have done
19    nothing to resolve or get back at anything that was
20    happening with his property.  No motive for it.
21         The property resident, nor the owner, have accused
22    Mr. Dawson of doing anything about the -- related to this
23    fire.  So the mere fact that his phone is showing activity
24    in the area only makes sense because he lived on the street
25    and he was in his house when it happened.

1       The video of the figure, as the government
2  acknowledges, you can't tell who that person is.  So to
3  simply, you know, use cell phone data of someone moving in
4  their house to someone outside the house, which we think our
5  expert is going to be able to clearly show, certainly is not
6  going to prove this case beyond a reasonable doubt.  And if
7  it does, then this is going to become a battle of experts
8  and we want to know -- because our expert is telling us that
9  this is unreliable data, that you can have -- your phone can
10 record steps while you're stationary if it's moving in your
11 hand.
12      So that may or may not be true and -- but we think in
13 order to fairly try this case we need the best information
14 from the experts on how this information is interpreted
15 because it's subject to severe prejudice if it is
16 incorrectly interpreted to the jury.
17      So we feel that this issues needs -- these issues need
18 to be fleshed out by way of a Daubert Hearing.
19              THE COURT:  Well, let me ask you, you retained
20 an expert who's given you an opinion?
21              MR. IVEY:  Yes, Your Honor.
22              THE COURT:  Okay.  And has either expert
23 produced reports?
24              MR. IVEY:  No, Your Honor, because at this
25 point our expert was -- we were consulting, and I may be --

1  I hope I didn't disclose more than I was supposed to that my
2  colleague wanted me to, I'm just trying to get to the heart
3  of the matter.
4  　　　　We haven't determined yet if we're actually going to
5  need to call that expert yet.  It depends on whether the
6  government gets an expert and calls it and if this Court
7  determines what is admissible and what is not admissible.
8  So right now that expert remains a consultant.
9  　　　　　　　　THE COURT:  All right.  Let me --
10 　　　　　　　　MR. IVEY:  If the Court determines these
11 issues can be brought forward by expert testimony by what
12 the government presents at the Daubert Hearing, well, then
13 we'll disclose experts and reports.
14 　　　　　　　　THE COURT:  Okay.  So just so I'm clear, if it
15 was merely a consultant expert only, that would not be
16 someone who would be testifying at trial -- right? -- if it
17 remained a consulting expert.
18 　　　　　　　　MR. IVEY:  That's correct, Your Honor.
19 　　　　　　　　THE COURT:  And so right now you have not
20 designated an expert that you intend to call at trial; you
21 are indicating that, what, you're awaiting the outcome of a
22 Daubert Hearing in regard to the government's expert before
23 you decide whether to retain one or not?  Or you're
24 retaining one --
25 　　　　　　　　MR. IVEY:  No.  I mean -- we have someone,

1    they're just serving in a consulting capacity at the moment.
2    We won't have to go out and find someone.  That person's
3    status with us will change if the government, in fact, does
4    get an expert and we're going -- and this Court grants a
5    Daubert Hearing, well, then that person will be elevated to
6    the status of expert and we will certainly have a report
7    done and turn it over to the government.
8             THE COURT:  Well, okay.  So now I think I kind
9    of have an idea where the parties are generally but we're
10   going to have to set a schedule here and something that --
11   because it's too amorphous, so we're going to have to have a
12   schedule where the government has some time to retain
13   another expert and you're able to get the information and
14   report from that.
15        I'll come back to the step where we deal with
16   defendant's expert, but if we were going to have a
17   Daubert Hearing -- and, of course, I'll need to wait to see
18   about the second expert, but if we're going to have a
19   Daubert Hearing, it's contemplated that the Daubert Hearing
20   will be both in regard to what the agent will testify to or
21   now just a Daubert Hearing in regard to a person talking
22   about the Apple phone, how it operates, and what it could
23   depict?
24             MR. IVEY:  It would be both, Your Honor, from
25   our perspective.

1    THE COURT:  And in terms of the agent, what is
2    it that the Daubert Hearing would be about?
3    MR. IVEY:  Whether or not the agent is
4    qualified, based on their training and experience, to be
5    able to accurately interpret the phone evidence just by
6    looking at it.
7    THE COURT:  Okay.  And the phone evidence that
8    the agent has interpreted will now be replaced with whatever
9    the expert says about it; right?
10   I mean, what would --
11   MR. IVEY:  Well, we don't know that their
12   expert is going to agree with the agent.  That's the whole
13   point.  Our expert does not agree with the agent, so -- any
14   more than if I look at Health Data, what it means to me.  I
15   can say what it means to me, but I will confess, I'm totally
16   unqualified to do that with -- to be able to utilize my
17   opinion to a jury, trying to make a decision.
18   THE COURT:  I thought you could read these
19   Apple phones and watches, Mr. Ivey.
20   MR. IVEY:  Well, I'm brilliant, but I'm not
21   supremely brilliant, particularly when it comes to texts.
22   Everyone in my office can tell you that, I'm not.
23   So, you know, just simply saying, okay, this shows
24   movement, the figure is moving, that means it's him, I'm not
25   qualified to do that, and we don't think the agent is

1  either.

2  THE COURT: All right. So it sounds like what
3  we need from the government, once they get the second
4  expert, assuming they get it, as part of that, just to state
5  what the agent -- expect the agent would testify in regard
6  to and what the other expert would testify to. And the
7  reason I say that is because what the agent may -- may have
8  been prepared to testify to may be narrowed based on the new
9  expert. And so just -- we need a good sense what each one's
10 going to testify to once you have a second person.

11 MR. DALY: Yes, Your Honor.

12 THE COURT: And then let's talk about
13 timeframe here.

14    You got a person you're talking to. How much time you
15 think it will take before you will have retained the expert
16 and obtained an opinion?

17 MR. DALY: Judge, I would ask for 45 days to
18 allow the expert -- we're already in the process of
19 obtaining the expert. It helps a little bit now that we
20 have funding again.

21    I would anticipate we'll have the expert retained no
22 later than middle of next week and then we can provide them
23 with all the data and they can provide their report.

24    I'd ask for 45 days.

25 THE COURT: 45 days to have your report?

```
 1                    MR. DALY:  Correct.
 2                    THE COURT:  All right.
 3            And then would the next step be, I guess, for the
 4     defendant to refresh his motion if he wishes, Mr. Ivey?
 5                    MR. IVEY:  Yes, Your Honor.
 6                    THE COURT:  And you've got some of that set
 7     out but if you get a fresh new expert, of course you'll need
 8     to put down your bases for that if you're going to challenge
 9     that.  What do you need for that?
10          (Attorney-client discussion.)
11                    MR. IVEY:  Yeah, just 45 days for us as well,
12     Your Honor.
13                    THE COURT:  You need 45 days to challenge him?
14                    MR. IVEY:  Well, our --
15                    THE COURT:  Just whether or not you're going
16     to --
17                    MR. IVEY:  No.  To get our expert's report in
18     response to what they give us.
19                    THE COURT:  Okay.
20                    MR. IVEY:  Our expert's kind of -- is really
21     kind of renowned in this and has got a bunch of matters that
22     he's working on, so I just want to --
23                    THE COURT:  Okay.
24                    MR. IVEY:  -- give him time to get the report
25     done.
```

1   THE COURT: And that would be your -- that
2   would be -- so you can get a supplement to your *Daubert*
3   motion, if you're going to file one, within 45 days.
4   MR. IVEY: That's correct, Your Honor, and our
5   goal would be to get it in before the 45 days is up.  I just
6   don't want to promise his schedule without knowing.
7   THE COURT: Okay.  Because it's going to go --
8   going to be quite a bit of time here but, of course, the
9   issue is important, I understand that and, so, 45 days for
10  the government to designate an expert and to provide a
11  report to you.
12      You want 45 days -- that is defendant -- to review the
13  report and to supplement, within that timeframe, any *Daubert*
14  motion.
15      And then I guess the next thing I would need to do is
16  to set a potential hearing date for a *Daubert* motion should
17  I conclude that a hearing is warranted, and that should
18  probably be. . . oh, before I do that, I guess the
19  government would have to respond, would be likely want to
20  respond, to a supplemented motion.
21  MR. DALY: Yes, Your Honor.
22  THE COURT: How many days do you think you
23  need for that?
24  MR. DALY: 10 days.
25  THE COURT: All right.  Thank you.

1        And then now if there's going to be a reply, it should
2   be a very short period of time.
3        How much, Mr. Ivey?
4             MR. IVEY:  Another 10 days maybe.
5             THE COURT:  Seven?
6             MR. IVEY:  Seven's fine.  Seven is fine.
7             THE COURT:  I was going to say five.
8             MR. IVEY:  We'll play Solomon and split the
9   middle.  Seven is fine.
10            THE COURT:  And then the Court, I guess, would
11  set a tentative Daubert Hearing I would say -- I don't want
12  to cut it too short because it sounds like it's going to be
13  a pretty substantial motion here with two experts and so
14  forth.  So the hearing would be. . . within 30 days, and
15  we'll have to get a hearing date, but remember, you're
16  writing these motions and supplementing them and now we've
17  got to have two experts involved and so I need to determine
18  whether *Daubert* is necessary and if so, in regard to which
19  issues and which experts.  That's something I've got to do
20  before we get to a hearing.  And so that's why I say about
21  30 days out for the hearing, we'll just put it and have a
22  placeholder, but it seems to me like that's where we are.
23       We need to vacate the trial date and the other
24  timeframes in the Trial Order -- well, I guess we don't need
25  to vacate them because a lot of them are tied to how many

1     days before the trial takes place, but we definitely need to
2     vacate the Trial Order and the next thing would be the
3     hearing, if any.  And if there's no hearing, then, of
4     course, we'll come back for either it would be a Daubert
5     Hearing or a final pretrial, depending on which is
6     appropriate.
7          And I -- do I have a joint ends of justice motion or a
8     motion by the government without objection from defendant
9     that we continue this matter for this period of time that we
10    just outlined so that the *Daubert* issues could be
11    appropriately briefed and heard?
12              MR. DALY:  Yes, Your Honor.
13              THE COURT:  Okay.
14        Any objection to that?
15              MR. IVEY:  No objection, Your Honor.
16              THE COURT:  All right.
17        I think that's all we need to plan for right now.  And
18    it will be a Daubert Hearing or final pretrial, depending on
19    the outcome of the -- of my ruling on the motion about
20    whether hearing is appropriate.
21        All right.  Okay.  Yeah, I -- you know, this is --
22    these are -- this is relatively new technology.  I don't
23    profess to know anything about how it works.
24        I do know that Apple phones and Apple Watches are
25    becoming pretty common.  A lot of us have them.  A lot of

1  people think they would know how they work and understand

2  them, and they probably do part of it, but, you know,

3  questions about what creates the data, what you see in the

4  data, and what the data means, those are significant issues.

5  So in light of that, I'll -- we will continue the matter

6  with an ends of justice finding until we come back for that.

7       All right.  Any -- anything further from the United

8  States?

9            MR. DALY:  No, Your Honor.

10       Thank you.

11            THE COURT:  Okay.

12       Anything further from the defendant?

13            MR. IVEY:  Not at this time, Your Honor.

14       Thank you.

15            THE COURT:  All right.  Thank you.

16            COURTROOM DEPUTY:  All rise.

17    (Proceedings adjourned at 11:26 a.m.)

18

19                    **C E R T I F I C A T E**

20     I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
21  prepared from my stenotype notes.

22         */s/ Heather K. Newman*                     12-10-2025
           HEATHER K. NEWMAN, RMR, CRR                    DATE
23

24

25