UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 5:25 CR 173 |
| ) | |
| Plaintiff ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| v. ) | |
| ) | |
| DEMAR DAWSON, ) | |
| ) | |
| Defendant ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Demar Dawson's ("Defendant" or "Dawson") Motion to Reopen Detention Proceedings ("Motion") (ECF No. 29), pursuant to 18 U.S.C. § 3142(f)(2). For the following reasons, the court grants the Motion.

**I. BACKGROUND**

On April 16, 2025, a federal grand jury indicted Dawson on one count of arson, in violation of 18 U.S.C. § 844(I). (ECF No. 1.) He is charged with maliciously setting fire to the residence of his former romantic partner. (*Id.* at PageID 1.) Following a detention hearing on April 30, 2025, the Magistrate Judge adopted the recommendation of Pretrial Services and ordered Dawson detained pending trial, finding "detention is warranted based on danger to the community or others." (ECF No. 13, Magistrate Order at PageID 36.) Thereafter, on May 27, 2025, Dawson filed a Motion to Revoke the Magistrate's Detention Order. (ECF No. 17.) That Motion was denied on July 11, 2025, after this court's *de novo* review found, "clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if Defendant was

released on bond." (ECF No. 21, Ct. Order at PageID 86.) The court reasoned that, although Dawson "does not present a significant risk of flight," he does "pose[] significant risk of danger, to both the individuals he allegedly targeted, and the community more broadly." (*Id*.) That decision was based on the "strong" weight of evidence at the detention hearing that he intentionally set fire to the home, as well as his violation of terms of parole and supervision in other cases. (*Id*. at PageID 85–86.)

On November 7, 2025, Dawson filed a Motion for a *Daubert* Hearing (ECF No. 26), "to determine the admissibility of evidence obtained from [his] Apple iPhone Health Data by ATF Special Agent and Certified Fire Investigator Clay McCausland." (*Id*. at PageID 100.) The court held an in-person pretrial conference, during which it granted the Government's unopposed oral motion for continuance, giving it 45 days to designate an expert, and review expert reports. (Dkt. Entry 11/13/2025, Minutes of Proceedings [non-doc.].) The granting of that request necessitated that the trial date of December 9, 2025, be set aside. (*Id*.)

On December 19, 2025, Defendant filed the instant Motion to Reopen Detention Proceedings. (ECF No. 29.) On December 23, 2025, the Government moved for an Extension to Complete Expert Report (ECF No. 30), until January 6, 2026, which the court granted. The Government has not filed any Response to the pending Motion to Reopen. Accordingly, Defendant's Motion is unopposed, and ripe for adjudication.

## II. LAW AND ANALYSIS

In the instant Motion, Dawson "requests his detention be reopened." (Mot. at PageID 130.) A pretrial detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are

conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The movant must "provide new information that was unknown to him at the time of the initial detention," not simply "reiterate[] arguments regarding flight risk and dangerousness based on the § 3145(g) factors." *United States v. Alhallaq*, No. 5:25-CR-309, 2026 WL 177624, at *2 (N.D. Ohio Jan. 21, 2026). Previously, the court concluded no conditions of release would mitigate Dawson, "pos[ing] significant risk of danger, to both the individuals he allegedly targeted, and the community more broadly." (Ct. Order at PageID 85–86.) Now, however, Dawson presents information which materially bears on whether conditions of release could reasonably assure the safety of others and the community.

The Motion relies on information that Dawson obtained after his detention hearing, through the discovery process, and through the Government's request, made at the November 13, 2025 hearing, for an extension to designate an expert and review reports. Specifically, Dawson maintains that this process revealed, "the [G]overnment . . . does not have an expert to explain how the Apple Health Data is collected or what it can and cannot show. It was not until after Mr. Dawson moved for a *Daubert* hearing that the government decided to consult an expert." (Mot. at PageID 130.) In addition, discovery revealed that when the alleged arson victim, Dawson's former romantic partner, was interviewed by law enforcement, she "did not indicate any concerns about Mr. Dawson . . . . In fact, [she] informed law enforcement that she believed someone else was responsible for the fire." (*Id*.) In sum, Dawson argues: "[i]n light of the government's concession that it did not have an expert review the Health Data, its need for more time to prove its case, and the evidence in the discovery that contradicts the government's theory of motive, this [c]ourt should revisit detention." (*Id*.)

The court finds this persuasive, and can no longer conclude the weight of the evidence shows

Dawson's release would create a risk of danger that cannot be mitigated by conditions of release. (*See* Ct. Order at PageID 85–86.) During the detention hearing, the Government primarily relied on video footage and iPhone data. (Hearing Tr. at PageID 45–46.) The iPhone data has now been challenged by Dawson as unreliable. Further, the Government acknowledged that it had not retained a non-government expert to review the data, and that it needed more time to designate an expert and obtain a report. (*See* ECF No. 30.) Dawson argues this development and information obtained in discovery, including the alleged victim's statement that she does not believe he committed the offense, (Mot. at PageID 130), should cause the court to conclude it is less likely that he "poses a significant risk of danger, to both the individuals he allegedly targeted, and the community more broadly." (Ct. Order at PageID 86.) Finally, the Government has not opposed this Motion, and "[t]he default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

In light of the above, the court finds there is not "clear and convincing evidence" to support a finding that "no condition or combination of conditions would reasonably assure . . . the safety of any other person and the community." *Id*. at 945; *see also id*. at 948 (citing *United States v. Hazime*, 762 F. 2d 34, 37 (6th Cir.1985)) ("weight of the evidence . . . 'deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community'"). Instead, the court finds pretrial detention of Dawson is not warranted, because there are conditions of release which would reasonably assure his appearance and the safety of others and the community. Therefore, Dawson is ordered released pending trial, pursuant to the court's discretion under 18 U.S.C. § 3142(f)(2).

However, release under § 3142(b) on personal recognizance or bond, alone, is not sufficient,

given other considerations, including dangerousness of the alleged offense. Therefore, the court orders Dawson released under § 3142(c). Under § 3142(c)(1)(A), Dawson's pretrial release is "subject to the condition that [he] not commit a Federal, State, or local crime during the period of release and subject to the condition that [he] cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 . . . ." Additionally, under § 3142(c)(1)(B), the court imposes the following combination of conditions, to "reasonably assure" the safety of others and the community.

First and foremost, Dawson is ordered released to home confinement, with electronic monitoring. *See* 18 U.S.C. § 3142(c)(B)(iv). There was some confusion over the Defendant's proper address at the detention hearing, so the court clarifies that he is confined to the "current address that he was at at [sic] the time of this arrest," which the court understands to be his childhood home in Akron. (Hearing Tr. At PageID 51–52) if the Office of Pretrial Services and Probation finds it suitable. If it does not find it suitable, then that Office shall notify the court whether another suitable place is available. Defendant is also not permitted to travel outside of the jurisdiction, without prior approval of the court. *See* 18 U.S.C. § 3142(c)(B)(iv). Moreover, Dawson must abide by the following conditions: (1) "avoid all contact with [the] alleged victim of the crime and with a potential witness," *i.e.*, the woman and her minor child who were inside the home at the time of the alleged arson; (2) "report on a regular basis to . . . pretrial services"; (3) "refrain from possessing a firearm, destructive device, or other dangerous weapon"; and (4) "refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner." 18 U.S.C. § 3142(c)(B)(v), (vi), (viii), (ix). Dawson's compliance with these

conditions of release, (*see* Mot. at PageID 131 ("Dawson will follow whatever release conditions this [c]ourt imposes so that he can return to his son who needs him")), reasonably assures Dawson is not a danger to other people or the community.

Defendant shall be transported by the U.S. Marshal Service to the Federal Courthouse in Akron, Ohio forthwith, to be fitted for Electronic Monitoring, and to sign the required Appearance Bond and Order Setting Conditions of Release documents.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Reopen Detention Proceedings. (ECF No. 29.) Dawson is hereby ordered released, subject to the above conditions.

IT IS SO ORDERED.

>  */s/ SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

February 5, 2026